```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA
```

MILLING BENSON WOODWARD                    CIVIL ACTION
L.L.P.

VERSUS                                     NO: 06-923


ISOTRON CORPORATION,                       SECTION: "J" (4)
ET AL.


## ORDER AND REASONS

Before the Court is plaintiff's Motion to Enforce Settlement, or Alternatively, Reinstate. (Doc. 8.) The motion to enforce is opposed, whereas the alternative relief of reinstatement is not opposed. For the following reasons the Court finds that the Motion to Enforce should be GRANTED.

### BACKGROUND

Prior to this suit, plaintiff Milling Benson Woodward provided legal representation for defendants Isotron Corporation and Henry Lomasney in intellectual property litigation. A fee arrangement was allegedly reached whereby Isotron Corporation and Henry and Christina Lomasney (Isotron's owners) would give plaintiff a minority interest in the company. The arrangement was

never consummated, and plaintiff filed this suit in state court to recover the attorney's fees it claims are owed to it. Defendants removed the case based on diversity. No return of service or answer was ever filed in this case. Instead of proceeding with the litigation, counsel for the parties negotiated settlement terms by letter. The case was placed on the Court's call docket on July 19, 2006. When the Court called about the failure to file proof of service or an answer, defendants' counsel informed the Court that the case had settled. Based on this representation, an order issued on July 21, 2006 dismissing the case, but retaining jurisdiction to enforce the settlement.

## PARTIES' ARGUMENTS

Both sides argue at times about the enforceability of the original fee arrangement, but the merits of that issue are not before the Court. The motion to enforce settlement of the claims arising from the alleged fee arrangement depends upon a finding that there was a settlement in place. The existence of a settlement in this case hinges upon the requirement under Louisiana law that a settlement must be reduced to writing and that there must be mutual consent, or a meeting of the minds, as to the terms. *See* La Civ. Code art. 3071.

Plaintiff attaches to its motion a series of letters between counsel, which plaintiff argues constitute the agreed upon terms

of settlement. Plaintiff also argues that Fifth Circuit precedent establishes that a 60-day order satisfies the writing requirement of the Louisiana Civil Code. Defendants argue that the various letters provided by plaintiff demonstrate that no agreement was ever reached, because they were each counteroffers and were never signed by the parties. Defendants also argue that their offer expressly contemplated that the agreement would be a signed written agreement and that the presumption of Civil Code article 1947 therefore applies to negate the binding effect of the agreement.

## DISCUSSION

Plaintiff relies on *Mull v. Marathon Oil Company*, 658 F.2d 386 (5th Cir. 1981), for the proposition that a 60-day order satisfies the writing requirement for a settlement under Louisiana Civil Code article 3071. Defendants counter that *Mull* and all the district level cases that rely upon it are distinguishable because the terms in each of those cases were simple and it was clear that the parties had reached an agreement beforehand. Defendants argue that reliance on *Mull* is misplaced in this case because the settlement has complicated terms and, in any event, no agreement was ever reached.

Defendants' argument is less convincing for two reasons. First, the terms of the agreement can be ascertained from the

exchange of signed letters. Second, defendants informed the Court through counsel that the case was settled, so the attempt to create uncertainty now is somewhat suspect.

On March 21, 2006 Defendants' counsel proposed a settlement with nine terms. (Pl's Ex. A.)

On April 19, 2006, Plaintiff's counsel "accepted" with three modifications, which qualifies as a counter offer. (Pl's Ex. B.)

On May 4, 2006 Defendants' counsel responded with further modifications to the modifications, and a reiteration of the original nine terms. (Pl's Ex. C.)

On May 17, 2006 Plaintiff's counsel sought clarification of three tangential issues, and agreed "to proceed with a settlement subject to clarifying the above issues and the execution of a definitive agreement among the parties." (Pl's Ex. D.)

On June 23, 2006 Defendants' counsel responded to the request for clarification by agreeing to each of plaintiff's proposals and did not propose any further modifications. (Pl's Ex. E.)

It was shortly after this letter that Defendants' counsel told the Court that the case had settled, and the 60-day order issued. Defendants' counsel then wrote a letter on August 22, 2006 enclosing "the settlement documents evidencing our agreement to resolve the above-referenced matter" and seeking "to add a

4

provision to the settlement agreement" about buying out plaintiff's shares. (Pl's Ex. G.) Plaintiff responded by trying to make further modifications to the written agreement in a letter on October 2, 2006. (Pl's Ex. H.)

In *Parich v. State Farm*, 919 F.2d 906 (5th Cir. 1990) the Fifth Circuit held in a very similar situation that the multiple signed letters of counsel formed the writing necessary to satisfy article 3071 and to establish the meeting of the parties' minds. The Fifth Circuit held that where there was no further parole evidence needed to ascertain the complete agreement, the composite of the writings was sufficient. *Id.* at 913-14. The Court found the signatures of counsel on the letters to be sufficient to ensure proper proof of the agreement and that the signatures of the parties were not mandatory. *Id.*

It is apparent from the letters attached to plaintiff's motion that on June 23, 2006 the terms of the settlement were in writing and were agreed to by the parties, as proved by the signatures of their counsel. In this case, the letters are sufficient to satisfy the writing requirement on their own. In addition, the existence of a written agreement is merely bolstered by the legal effect of the 60-day order under *Mull*. The terms of the agreement are the initially proposed terms, with the modifications contained in the May 4, 2006 letter, and the

5

"clarifications" in plaintiff's counsel's letter of May 17th, 2006. The aggregate of these terms was accepted by defendants through counsel in the letter of June 23, 2006.

Defendants seek to gloss over their apparent agreement to the settlement terms on June 23, 2006 by arguing that they "believed that, with these clarifications provided, Plaintiff would be accepting Defendants' May 4, 2006 offer." (Def's Sur-Reply at 4.) Defendants thus seek to require a further acceptance by plaintiff. However, this purported belief of defendants is belied by the fact that defendants informed the Court that they had agreed to settle the case. In addition, defense counsel's letter of August 22, 2006 to plaintiff's counsel unequivocally states that the parties had agreed to settle. (Pl's Ex. G.)

Defendants cannot rely on Civil Code article 1947 to vacate this Court's 60-day order of dismissal. Both defendants' initial offer and plaintiff's counter-offer on May 17, 2006 sought "the execution of a definitive agreement among the parties" as a term of the agreement. Defendants argue that Civil Code article 1947, which creates a presumption that the parties are not bound until the contract is reduced to its contemplated form, applies. However, defendants rebutted that presumption by telling the Court that a settlement had been reached and requesting a 60-day order. *Cf. Dickerson v. Cajun Commc'ns of Tex.*, 910 So. 2d 477,

480-81 (La. App. 2 Cir. 2005), writ denied 925 So. 2d 490, 2005-2267 (La. 3/8/06), writ denied 925 So. 2d 520, 2005-2332 (La. 3/10/06) (finding that although letter of intent contemplated "formal agreement" would follow, La. Civ. Code art. 1947 did not apply where subsequent conduct signified intent to be bound). Defendants obtained a dismissal of the suit against them from this Court by representing that they had agreed to settle, such that the Court will not now apply at their request a presumption that they had not agreed to settle.

## CONCLUSION

The terms of the settlement that were agreed to by all parties are contained in Exhibits C and D attached to Record Document 21. Based upon this agreement to settle, defendants obtained a dismissal of this lawsuit, with a reservation of this Court's jurisdiction to summarily enforce the settlement.

Accordingly,

**IT IS ORDERED** that plaintiff's Motion to Enforce Settlement (Doc. 8) is **GRANTED.**

New Orleans, Louisiana this the 17th day of January, 2007.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE